UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


DOUGLAS BARNES (#402782)

VERSUS                                    CIVIL ACTION

BURL CAIN                                 NUMBER 07-274-JJB-SCR


<u>**NOTICE**</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.


ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, November 21, 2014.


STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DOUGLAS BARNES (#402782)

VERSUS                                    CIVIL ACTION

BURL CAIN                                 NUMBER 07-274-JJB-SCR

## SECOND SUPPLEMENTAL MAGISTRATE JUDGE'S REPORT

Before the court is the Supplemental Petition for Writ of Habeas Corpus Under 12 (sic) U.S.C. § 2254 By a Person in State Custody (hereafter "Supplemental Petition") filed by petitioner Douglas Barnes.  Record document number 50.[1]

For the reasons set forth in the Magistrate Judge's Report issued September 23, 2008, and the Supplemental Magistrate Judge's Report issued October 27, 2008, both addressing the grounds for relief raised in the original Petition For Writ of Habeas Corpus Under 28 U.S.C. § 2254 By a Person in State Custody (hereafter "Original Petition"), and for the additional reasons set forth below addressing the grounds for relief raised in the Supplemental Petition, the petitions should be denied.

---

[1] Only the grounds for relief raised in the Supplemental Petition are addressed in this Second Supplemental Magistrate Judge's Report.  The grounds for relief raised in the Original Petition were previously addressed in magistrate judge's reports issued on September 23, 2008 and October 27, 2008.  These prior magistrate judge's reports remain pending before the district judge.

## I. Procedural History

Petitioner was found guilty of one count second degree murder in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, Louisiana on April 2, 2001. Petitioner was sentenced to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence.

The Louisiana First Circuit Court of Appeal affirmed the conviction and sentence. *State of Louisiana v. Douglas Barnes*, 2002-0572 (La. App. 1st Cir. 11/20/02), 836 So.2d 704 (Table). Petitioner's application for supervisory review was denied by the Louisiana Supreme Court. *State of Louisiana v. Douglas Barnes*, 2002-3139 (La. 9/26/03), 854 So.2d 346.

Petitioner filed an application for post-conviction relief ("PCRA") in the state district court on September 24, 2004. Petitioner raised the following grounds for relief:

(1) He was denied a right to a fair trial when:

    (a)   the trial court erred in denying his motion for post-verdict judgment of acquittal, or modified verdict, or new trial because the evidence adduced at trial was legally insufficient to support the conviction;

    (b)   the trial court erred in denying his motion for severance and motion for new trial, which was based, in part, on an erroneous ruling with regard to the motion for severance; and

    (c)   the prosecution withheld exculpatory evidence in

violation of *Brady v. Maryland*.[2]

    (2)  He was denied effective assistance of counsel on appeal.

    (3)  He received an excessive sentence.

Petitioner filed a supplemental PCRA on March 1, 2005, raising the following additional grounds:

    (4)  There was insufficient evidence to support the conviction.

    (5)  He was denied effective assistance of counsel on appeal.

The state district court denied the petitioner's PCRA on September 20, 2005. Petitioner sought supervisory review from the Louisiana First Circuit Court of Appeal. The appellate court denied review. *State of Louisiana v. Douglas Barnes*, 2005-2614 (La. App. 1st Cir. 4/10/06). Petitioner sought review by the Louisiana Supreme Court. The Louisiana State Supreme Court denied review. *State of Louisiana v. Douglas Barnes,* 2006-1106 (La. 2/2/07), 948 So.2d 189.

Petitioner, through counsel, filed his Original Petition on May 1, 2007. Petitioner asserted the following grounds for relief:

    (1)  The State withheld exculpatory evidence, specifically, a synopsis of Alan Hill's recorded statement, in violation of his due process rights;

    (2)  He was denied the right to cross-examine a witness, Alan Hill, on his inconsistent statements.; and,

    (3)  There was insufficient evidence to support his second degree murder conviction.

---

[2] 373 U.S. 83, 83 S.Ct. 1194 (1963).

On September 28, 2008, a Magistrate Judge's Report was issued recommending that the Original Petition be denied.[3] Petitioner filed an objection.[4] The matter was referred back to the magistrate judge for the issuance of a supplemental report addressing the objections raised by the petitioner.[5] On October 27, 2008, a Supplemental Magistrate Judge's Report was issued, again recommending that the Original Petition be denied.[6] No ruling has been issued on either Magistrate Judge's Report.

On May 1, 2009, the petitioner filed Petitioner's Motion to Hold Habeas Corpus Petition in Abeyance.[7] Following oral argument, the Petitioner's Motion to Hold Habeas Corpus Petition in Abeyance was granted.[8] On July 13, 2012, this case was administratively terminated without prejudice to the right of the parties to reopen the case.[9]

Petitioner returned to state court, where he filed his second

---

[3] Record document number 16.

[4] Record document number 17.

[5] Record document number 18.

[6] Record document number 19.

[7] Record document number 30.

[8] Record document number 39.

[9] Record document number 47.

PCRA in the state district court on May 4, 2009.[10]  Petitioner

raised a single ground for relief:

> (1)    Newly discovered evidence — the affidavit of Joseph
>        Cosimini executed on March 18, 2009, – impeaches the
>        testimony of Alan Hill and Chad Babineaux.[11]

Petitioner supplemented his second PCRA on July 2, 2009,

raising the following additional grounds for relief:

> (2)    The prosecution withheld favorable evidence regarding the
>        sentencing agreement with Cosimini, in violation of the
>        petitioner's due process rights;
>
> (3)    The prosecution knowingly introduced false testimony,
>        i.e., it concealed the sentencing agreement with Cosimini
>        in exchange for his testimony; and,
>
> (4)    The petitioner was denied the right to confront Cosimini
>        about the deal between him and the district attorney.[12]

On January 10, 2013, the state district court denied the

petitioner's second PCRA on the grounds that the PCRA was untimely

and repetitive, pursuant to La.C.Cr.P. arts. 930.8 and 930.4,

respectively.[13]  Petitioner sought supervisory review by the

Louisiana First Circuit Court of Appeal.  The appellate court

denied review.  *State of Louisiana v. Douglas Barnes*, 2013-0339

---

[10]  Record document number 50-3, Exhibit A, Joseph Cosimini's
Affidavit (herefter "Cosimini Affidavit").  The Cosimini Affidavit
was filed in connection with various state and federal court
pleading and so it appears in the federal court record multiple
times.

[11]  *Id.*

[12]  Record document number 50-4.

[13]  Supplemental State Court Record, Vol. 1.

(La. App. 1st Cir. 5/8/13).[14]   Petitioner sought review by the
Louisiana Supreme Court.  The Louisiana State Supreme Court denied
review.  *State of Louisiana v. Douglas Barnes*, 2013-1289 (La.
10/11/13), 123 So.3d 1226.

On January 22, 2014, the petitioner filed a Motion to Remove
Stay and Abey in this court.[15]  Petitioner also filed a Supplemental
Petition without leave of court or by written consent of the
adverse party, which added several additional grounds for relief.[16]
Therein the petitioner asserted the following four grounds for
relief:

I.   The prosecution withheld favorable and impeachment
     evidence regarding the sentencing agreement with Cosimini
     and allowed Cosimini to testify falsely regarding the
     sentencing agreement, in violation of the petitioner's
     due process rights;

II.  He was denied his Sixth Amendment right to confront
     Cosimini regarding the sentence agreement;

III. There was insufficient evidence to support the
     conviction;

IV.  Newly discovered evidence casts doubt on the petitioner's
     second degree murder conviction, i.e., the petitioner is
     actually innocent.

On February 6, 2014, following a status conference before the
district judge, this matter was referred to the undersigned for

---

[14] Record document number 50-12.

[15] Record document number 48.

[16] Record document number 50.

6

scheduling.[17]

On February 19, 2014, the District Attorney for the Parish of East Baton Rouge, Louisiana was ordered to file an answer to the Supplemental Petition.[18]

The State filed a Memorandum in Opposition to Petition for Writ of Habeas Corpus.[19]  The State argued that the Supplemental Petition is untimely, Grounds I and II of the Supplemental Petition are procedurally barred, Ground III of the Supplemental Petition asserting an insufficiency of the evidence claim is without merit for the reasons set forth in the September 2008 magistrate judge's report, and Ground IV of the Supplemental Petition, in which the petitioner asserted that he is actually innocent of the crime for which he was convicted, is a stand-alone ground for relief which is clearly not exhausted.[20]

After concluding that the petitioner appeared to be asserting a stand-alone actual innocence claim in Ground IV of the Supplemental Petition and that the claim was not fully exhausted in state court, the petitioner was ordered within 14 days to dismiss

---

[17] Record document number 54.

[18] Record document number 56.

[19] Record document number 60.

[20] *Id.*

Ground IV of the Supplemental petition.[21]  In the alternative, if the petitioner is not asserting his actual innocence as a basis for federal habeas corpus relief in Ground IV, the petitioner was ordered to file an amended petition clarifying his claim in Ground IV.[22]  Petitioner was placed on notice that if he failed to comply with either of the above alternatives, Ground IV of his Supplemental Petition would be interpreted as asserting his actual innocence as a basis for federal habeas corpus relief.[23]

Petitioner did not appeal the April 24, 2014 order to the district judge and the delays for doing so have elapsed.  Rather, in response to the court's order, the petitioner filed Petitioner's Amendment to and Clarification of Ground IV of the Supplemental Petition (hereafter "Amendment and Clarification").[24]  In the Amendment and Clarification, the petitioner asserted that Ground IV does not assert a stand-alone claim of actual innocence except for such purposes as to excuse any procedural default, to toll the Antiterrorism and Effective Death Penalty Act's ("AEDPA") statute of limitations and to establish the petitioner's entitlement to an

---

[21] Record document number 61.

[22] *Id.*

[23] *Id.*

[24] Record document number 62.

evidentiary hearing.[25]

Considering the petitioner's response to the April 24, 2014 order, Ground IV will be interpreted as asserting a stand-alone actual innocence claim as a basis for federal habeas corpus relief and as a basis for overcoming the expiration of the AEDPA statute of limitations.

## II. Applicable Law and Analysis

### A. Timeliness

In its Memorandum in Opposition to Petition For Writ of Habeas Corpus[26] the State argued that the claims raised in the Supplemental Petition are untimely.[27]

The AEDPA requires that a petitioner file an application for writ of habeas corpus one year from the latest of the following four dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an

---

[25] Record document number 62, p. 1. However, in footnote two of the Amendment and Clarification, the petitioner argued that he has not abandoned his right to argue on review before the district judge the incorrectness of the April 24, 2014 order and contended that he preserved his right to argue that the Supplemental Petition states a stand-alone claim of actual innocence and the claim is exhausted. Petitioner's argument and contention are not addressed in this Second Supplemental Magistrate Judge's Report.

[26] Record document number 60.

[27] There is no dispute that the Original Petition was filed timely.

application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date at which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D).

Under § 2244(d), as amended by the AEDPA, a prisoner in custody pursuant to the judgment of a state court has a one year period within which to file an application for a writ of habeas corpus. The limitation period runs from the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. 28 U.S.C. § 2244(d)(1)(A).

As provided by § 2254(d)(2), the time during which a properly filed application for state post-conviction or other collateral review, with respect to the pertinent judgment or claim, is pending shall not be counted toward any period of limitation under this subsection. A "properly filed application" is one submitted according to the state's procedural requirements, such as the rules governing the time and place of filing. *Lovasz v. Scig*, 134 F.3d 146, 148-49 (3rd Cir. 1998); *Galindo v. Johnson*, 19 F.Supp.2d 697, 701 (W.D. Tex. 1998). A court must look to state law to determine whether a state habeas application conforms to the state's

procedural filing requirements. *Wion v. Quarterman*, 567 F.3d 146, 148 (5th Cir. 2009).

A state application is "pending" during the intervals between the state court's disposition of a state habeas corpus petition and the petitioner's timely filing of petition of review at the next level. *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001). An application ceases to be "pending" within the meaning of § 2244(d)(2) when the petitioner fails to timely file an application for supervisory review at the next level. *Id*. at 407. A state court's subsequent decision to allow review may toll the time relating directly to the application for supervisory review at that level, but it does not change the fact that the application was no longer pending prior to the decision to allow review. *Id*. After the period for appeal or seeking discretionary review has lapsed, an application ceases to be pending, but a subsequent properly filed application entitles the petitioner to additional tolling beginning at the time of the "proper" filing. *Id*.

Petitioner's conviction and sentence became final on December 25, 2003.[28]

---

[28] For purposes of § 2244(d)(1)(A), a state conviction becomes final by the conclusion of direct review or the expiration of the time for seeking such review. *See Causey v. Cain*, 450 F.3d 601, 606 (5th Cir. 2003) ("[A] conviction becomes final at the conclusion of direct review or when the time for such review has expired, as specified by AEDPA, regardless of when state law says finality occurs."). Normally that time expires 90 days after the state court of last resort enters its judgment. *Roberts v.* (continued...)

It is undisputed that the Original Petition was filed timely. From the date the petitioner's conviction became final on December 25, 2003, until September 24, 2004, the date the petitioner filed his PCRA, 242 days of the limitations period elapsed. From September 24, 2004, the date the petitioner filed his PCRA, until February 2, 2007, the date the Louisiana Supreme Court denied writs of certiorari, the limitations period remained tolled. From February 2, 2007, the date the Louisiana Supreme Court denied review, until April 30, 2007, the date the petitioner filed his Original Petition, 86 days of the limitations period elapsed. By the time the petitioner filed his Original Petition, 328 days of the limitations period had elapsed. Therefore, the petitioner's

---

[28](...continued)
*Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003). But when the defendant concludes his state-court direct appeal before it reaches the state court of last resort, "the conviction becomes final when the time for seeking further direct review in the state court expires." *Id.*

This federal rule applies even where state law provides that finality occurs on a different date. *Compare* La. Code Crim. Proc. art. 922(B) (providing that the court of appeal's judgment becomes final under Louisiana law fourteen days after the rendition of judgment in all cases in which an application for a writ of review is not filed with the Louisiana Supreme Court), *and* La. Sup. Ct. R. X, § (5)(a) ("An application seeking to review a judgment of the court of appeal ... after an appeal to that court ... shall be made within thirty days of the mailing of the notice of the original judgment of the court of appeal ...."), *with Roberts*, 319 F.3d at 693 n. 15 (noting that the judgment of an intermediate court of appeals is not final under Texas law until the mandate has issued), *and id.* at 694-95 (rejecting the argument that the mandate-issuance date should determine finality under AEDPA).

Original Petition was filed timely.[29]

However, because the petitioner did not have any collateral review pending in the state courts, the one-year limitations period elapsed 37 days later on June 6, 2007, more than six years before the petitioner filed his Supplemental Petition.[30] Therefore, unless the limitations period was otherwise tolled, or the petitioner is entitled to equitable tolling, or the claims asserted in the Supplemental Petition relate back to the Original Petition, the petitioner's Supplemental Petition is untimely.

### 1. Second PCRA did not toll limitations period.

Petitioner's Supplemental Petition was filed on January 22, 2014, more than six years after the expiration of AEDPA's time limit. This is so because the petitioner's second PCRA was not "properly filed" within the meaning of 28 U.S.C. § 2244(d). The second PCRA was denied by the state district court as untimely pursuant to La.C.Cr.P. art. 930.8. As a result, the AEDPA's one-year limitations period was not tolled during the pendency of the

_____

[29] Petitioner's Original Petition contained only his claims that the State withheld a synopsis of Alan Hill's recorded statement, he was denied the right to cross-examine Alan Hill on his inconsistent statements and there was insufficient evidence to support his second degree murder conviction (Ground 1, Ground 2 and Ground 3, respectively).

[30] As noted above, in the Supplemental Petition the petitioner reasserted his insufficient evidence claim (Ground III), and also asserted his claims regarding Cosimini's sentencing agreement and an actual innocence claim (Ground I, Ground II, and Ground IV, respectively).

state court proceedings on the petitioner's second PCRA. *Pace v. DiGuglielmo*, 544 U.S. 408, 417, 125 S.Ct. 1807 (2005)(holding that "time limits, no matter their form, are 'filing' conditions" so that when the state courts reject a state application for post-conviction relief as untimely, it cannot be considered "properly filed" so as to entitle the petitioner to statutory tolling pursuant to § 2244(d)(2)); *Wardlaw v. Cain*, 541 F.3d 275 (5th Cir. 2008), *cert. denied*, 555 U.S. 1141, 129 S.Ct. 1006 (2009).

## 2. Original Petition did not toll limitations period.

Because an application for federal habeas corpus review is not an "application for State post-conviction or other collateral review" within the meaning of 28 U.S.C. § 2244(d)(2), the limitations period was not tolled during the pendency of the petitioner's Original Petition filed on April 30, 2007. *Duncan v. Walker*, 533 U.S. 167, 181-82, 121 S.Ct. 2120, 2129 (2001).

## 3. Stay and abey order did not toll limitations period.

The AEDPA limitations period expired June 6, 2007. Following the issuance of the Magistrate Judge's Report[31] on September 23, 2008 and the Supplemental Magistrate Judge's Report[32] on October 27, 2008, both of which addressed the grounds for relief raised in the Original Petition, the petitioner sought an extension of time to

---

[31] Record document number 16.

[32] Record document number 19.

supplement the record.[33]  Specifically, the petitioner argued that
he had "located a witness who he believes has very relevant
information concerning the allegations contained in his Petition
for Writ of Habeas Corpus" but that he needed additional "time to
corroborate and verify the allegations before he moves to
supplement his petition."[34]  On December 12, 2008, the petitioner's
motion for additional time to supplement the record was denied.[35]
On December 15, 2008, the petitioner filed Douglas Barnes' Response
& Objection To Magistrate Judge's Ruling of December 12, 2008.[36]

On March 27, 2009, the petitioner filed Douglas Barnes' Motion
To Supplement The Record in which the petitioner sought to
supplement the record with a copy of the Cosimini Affidavit signed
on March 18, 2009.[37]  On March 30, 2009, the petitioner was ordered
to file a brief by May 1, 2009, citing authority as to why his
motion to supplement the record, filed on March 27, 2009, should be
granted.[38]

On May 1, 2009, the petitioner filed Petitioner's Motion To

---

[33] Record document number 21.

[34] *Id*. at 2.

[35] Record document number 22.

[36] Record document number 23.

[37] Record document number 27.

[38] Record document number 29.

Hold Habeas Corpus Petition In Abeyance.[39]  In this motion, the petitioner "concluded that the proper vehicle for presenting the newly discovered evidence outlined in Petitioner's Motion to Supplement the Record is to file a Uniform Application for Post Conviction Relief in the <u>State</u> court."[40]  On June 24, 2009, following a hearing, the Petitioner's Motion To Hold Habeas Corpus Petition in Abeyance was granted and the court deferred ruling on the petitioner's motion to supplement the record filed March 27, 2009 and the Supplemental Magistrate Judge's Report and Recommendation.[41]

On June 24, 2009, the date the Petitioner's Motion To Hold Habeas Corpus Petition in Abeyance was granted, only the Original Petition was pending before the court and the AEDPA limitation period had expired more than two years earlier.  Although the petitioner sought an extension of time to supplement the record with a copy of the Cosimini Affidavit, he did not seek leave of court to file an amended petition.  Rather, he determined that he

---

[39] Record document number 30.

[40] *Id.* at 3 (underline in original).

[41] Record document number 39.  As explained below, the Supreme Court stated in *Rhines v. Weber*, 544 U.S. 269, 125 S.Ct. 1528 (2005), that a stay and abey order is a narrow exception to the full exhaustion requirement of § 2254(b)(1) and applied the exception to a mixed petition.  Here, although the Original Petition was not a mixed petition, a stay and abey order was nonetheless issued.  Whether the stay and abey order was improperly granted or was an abuse of discretion is not addressed in this report.

would file a second PCRA within a few days, and asked that his pending habeas corpus petition be held in abeyance.

One of the threshold requirements for a § 2254 petition is that, subject to certain exceptions, the petitioner must have first exhausted in state court all of his claims before presenting them to the district court. 28 U.S.C. § 2254(b)(1) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that ... the applicant has exhausted the remedies available in the courts of the State....") The Supreme Court has interpreted § 2254(b)(1) to require dismissal of a habeas petition if it contained even a single unexhausted claim - the "total exhaustion" requirement. *Rose v. Lundy*, 455 U.S. 509, 518-19, 102 S.Ct. 1198 (1982).

In *Rhines v. Weber*, 544 U.S. 269, 125 S.Ct. 1528 (2005), the Supreme Court created an exception to *Lundy* for mixed petitions. The Supreme Court held that a district court may, "only in limited circumstances," stay a mixed petition, i.e., those petitions that contain both exhausted and unexhausted claims, rather than dismiss it. *Id.* at 277, 125 S.Ct. at 1535. "[S]tay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." *Id.* Petitioner's Original Petition contained only exhausted claims – it was not a "mixed petition." The stay and

17

abey order had no effect on the tolling of the already-expired §
2244(d) limitations period.

In *Pace v. DiGuglielmo*, 544 U.S. 408, 125 S.Ct. 1807 (2005),
which was issued the month after *Rhines*, the Supreme Court
suggested that *Rhines* may apply in limited circumstances outside
the context of a mixed petition.[42] In *Pace*, the Court held that the
statute of limitations for filing a federal habeas petition was not
tolled during the pendency of a prisoner's untimely state post-
conviction petition. *Id*. at 414-17, 125 S.Ct. at 1812-14. The
petitioner argued that the Court's interpretation would be unfair
to the petitioner who might litigate his case in the state court
for years in good faith, only to later discover that his state
petition was not properly filed because it was barred by the state
statute of limitations. *Id*. In rejecting the petitioner's
unfairness argument the Supreme Court, citing *Rhines*, explained:

> A prisoner seeking state postconviction relief might
> avoid this predicament, however, by filing a "protective"
> petition in federal court and asking the federal court to
> stay and abey the federal habeas proceedings until state
> remedies are exhausted. A petitioner's reasonable
> confusion about whether a state filing would be timely
> will ordinarily constitute "good cause" for him to file

---

[42] Although the Fifth Circuit Court of Appeals has not spoken
to the issue, several courts have concluded that *Pace* extended the
*Rhines* rationale beyond mixed petitions. *See Heleva v. Brooks*, 581
F.3d 187, 191-92 (3d Cir. 2009); *Dolis v. Chambers*, 454 F.3d 721,
724-25 (7th Cir. 2006); *Doe v. Jones*, 762 F.3d 1174, 1178-79 (10th
Cir. 2014); *but see Raspberry v. Garcia*, 448 F.3d 1150, 1154 (9th
Cir. 2006)(declining, without discussion of *Pace*, to extend stay
and abeyance to "the situation where the original habeas petition
contained only unexhausted claims...").

in federal court.

*Id*. at 416, 125 S.Ct. at 1813 (internal citations omitted).

Even assuming, without deciding, that *Pace* is applicable outside the context of a mixed petition, the AEDPA statute of limitations was not tolled by the issuance of the stay and abey order. This is so because the petitioner purposefully did not file a protective amended petition regarding the claims asserted years later in the Supplemental Petition. Therefore, the petitioner's Supplemental Petition is untimely.

### 4. Claim of actual innocence did not toll limitations period.

In Petitioner's Amendment To And Clarification Of Ground IV Of The Supplemental Petition, the petitioner argued that he is actually innocent of the alleged offense and has overcome the filing deadlines, as set forth in *McQuiggin v. Perkins*, _____ U.S. _____, 133 S.Ct. 1924 (2013).[43]

"Actual innocence" itself is not a free-standing ground for habeas corpus relief. *Reed v. Stephens,* 739 F.3d 753, 766 (5th Cir. 2014); *Foster v. Quarterman*, 466 F.3d 359, 367 (5th Cir. 2006) ([A]ctual-innocence is *not* an independently cognizable federal-habeas claim."); *Dowthitt v. Johnson*, 230 F.3d 733, 741-42 (5th Cir. 2000), *cert. denied*, 532 U.S. 915, 121 S.Ct. 1250 (2001); *see also Graves v. Cockrell*, 351 F.3d 143, 151 (5th Cir. 2003).

---

[43] Record document number 62.

"Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 40, 113 S.Ct. 853, 862 (1993)(citing *Townsend v. Sain*, 372 U.S. 293, 317, 83 S.Ct. 745, 759 (1963)). The Supreme Court reaffirmed in *McQuiggin*, 133 S.Ct. at 1931, that it has not resolved whether a prisoner may be entitled to habeas corpus relief based on a freestanding claim of actual innocence. *Burton v. Stephens*, 543 Fed.Appx. 458 (5th Cir. 2013). Where a convicted inmate uncovers new evidence tending to prove his innocence, his recourse is to seek executive clemency, not federal habeas corpus relief. *Herrera*, 506 U.S. at 417.

In *McQuiggin*, the Supreme Court resolved a circuit split by holding that a habeas petitioner can overcome the expiration of the AEDPA statute of limitations by making a convincing showing of actual innocence. *McQuiggin*, 133 S.Ct. at 1928 (referencing 28 U.S.C. § 2244(d)(1)). *McQuiggin* held that a petitioner attempting to overcome the expiration of the AEDPA statute of limitations by showing actual innocence is required to produce new evidence sufficient to persuade the district court that "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." 133 S.Ct. at 1928 (quoting *Schlup v. Delo*, 513 U.S. 298, 329, 115 S.Ct. 851 (1995)). *McQuiggin* held that unjustifiable

delay on the part of a habeas petitioner, while not to be viewed as "an absolute barrier to relief," should still be considered as a "factor in determining whether actual innocence has been reliably shown." *Id*.

To open the gateway to federal habeas review a petitioner asserting his actual innocence of the substantive offense must: (1) present "new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence"; (2) "that was not presented at trial"; and (3) must show, that in light of this new evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537, 126 S.Ct. 2064, 2077 (2006), *citing Schlup v. Delo*, 513 U.S. 298, 299, 324-29, 115 S.Ct. 851, 854, 865-868 (1995).

But "the habeas court's analysis is not limited to such evidence." *Id.* Rather, "the habeas court must consider all the evidence, old and new, incriminating and exculpatory, without regard to whether is would necessarily be admitted under the rules of admissibility that would govern at trial." *Id.* at 538, 126 S.Ct. at 2077 (internal quotation marks and citation omitted). "Based on this total record, the court must make 'a probabilistic determination about what reasonable, properly instructed jurors would do.'" *Id.* (quoting *Schlup*, at 329, 115 S.Ct. at 851.

The *Schlup* standard "is demanding and permits review only in

the 'extraordinary' case." *House, supra,* at 538, 126 S.Ct. at 2077. In applying the *Schlup* standard, the Fifth Circuit has held that: (1) the petitioner "bears the burden of establishing that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence"; (2) "there is no presumption of innocence at a habeas proceeding" and the petitioner "comes before the habeas court with a strong - and in the vast majority of the cases conclusive - presumption of guilt"; and, (3) the *Schlup* standard "does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty." *Bosley v. Cain*, 409 F.3d 657, 664 (5th Cir. 2005). Put differently, "a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 329, 115 S.Ct. at 868.

In addition, a long-delayed affidavit like Cosimini's, which seeks to exonerate the petitioner and shift the blame for the crime to another person, is "treated with a fair degree of skepticism." *Herrera v. Collins*, 506 U.S. 390, 423, 113 S.Ct. 853, 872 (1993); *Spence v. Johnson*, 80 F.3d 989, 1003 (5th Cir. 1996)("[R]ecanting affidavits and witnesses are viewed with extreme suspicion by the courts." (citation and internal quotation marks omitted)).

As stated in the original Magistrate Judge's Report, in assessing whether the evidence was sufficient to support the petitioner's second degree murder conviction, a review of the trial transcript shows that a fair and accurate summary of the evidence was provided by the Louisiana First Circuit Court of Appeal in its opinion. *State of Louisiana v. Douglas Barnes*, at 3-10.

The First Circuit Court of Appeal made the following factual finding regarding the petitioner's co-defendant Jake Ortego:

> Similarly, numerous witnesses testified that they saw Ortego beating and kicking [Lance] Aydell after he was on the ground and no longer fighting back. Based on *Patorno*, we can infer from his actions that Ortego specifically intended to kill or to inflict great bodily harm on Aydell.

*State of Louisiana v. Douglas Barnes*, at 9 (internal citation omitted).

The appellate court then briefly addressed the law of principals:

> In other words, regardless of whether he actually "pulls the trigger," a person who knowingly participates in planning or executing a crime is "concerned in the commission of [the] crime" and is therefore liable as a principal. A defendant's mere presence at the scene is not enough to "concern" him in the crime.

*Id.* (addition in original).

The appellate court then stated the facts regarding the defendant's participation in the crime.

> But Barnes was not merely present at the scene. Babineaux and Schifflet testified that Barnes entered the park ready to fight. Verdin testified that Barnes asked whether anyone wanted to fight. Patterson testified that

Barnes, Ortego, and Brewer became angry when no one else showed up to fight. One commented that he would fight anyone and "pick a fight" with someone in the Aydell group. Justilian and Reed testified that Barnes and Ortego kicked Aydell while Amber Hebert yelled, "Kill him, just kill him, beat him." Hill, Babineaux, and Fontenot testified that Barnes and Ortego kicked and punched Aydell in the head while Aydell was on the ground. When Hill attempted to help Aydell, Barnes asked, "You want some too?" Both Barnes and Ortego then fought Hill. Lopez testified that he saw Ortego and Barnes hit Aydell, while Aydell struggled to get up with help from his friends. Reed testified that the Barnes group "wanted to hurt someone bad."

The evidence clearly indicates that Barnes aided and abetted in the commission of this murder. Thus, even if Barnes did not strike the fatal blow, because of his direct participation, he is liable as a principal for Aydell's murder.

*Id.* at 9-10.

Dr. Alfred Suarez testified that he performed an autopsy of Aydell[44] which revealed that Aydell sustained blunt trauma to his head and his death was due to injury to the brain.[45] The autopsy revealed three separate areas of trauma to the scalp where Aydell was struck.[46] Dr. Suarez testified that the three blows to Aydell's head caused contrecoup injuries in which Aydell's brain shifted striking bone on the opposite side of the impact.[47] Dr. Suarez testified that the three blows were likely inflicted within seconds

---

[44] Trial Transcript, March 28, 2001, Vol. 11, p. 15.

[45] *Id.* at 15-16.

[46] *Id.* at 20-21.

[47] *Id.* at 22-23.

of one another.[48]  He further testified that the cumulative effect of the three blows to the head caused Aydell's brain to hemorrhage and swell resulting in herniation of the brain stem.[49]  Dr. Suarez testified that Aydell's injuries were not consistent with Aydell falling and hitting his head on a tree root or a culvert.[50]

With specific regard to Cosimini's testimony at trial, Cosimini testified that either Doug Brewer or the petitioner kicked the victim in the head.[51]  Cosimini was extensively cross-examined by counsel for the petitioner regarding his prior testimony (presumably before the grand jury) in which he stated that the petitioner did not kick the victim.[52]  In addition, Cosimini testified that he was not offered a plea agreement for a lesser charge in exchange for his trial testimony.[53]  Counsel for the petitioner also cross-examined Cosimini extensively at trial regarding his plea agreement with federal prosecutors regarding his federal gun charge.[54]

The supposedly newly discovered evidence upon which the

---

[48] *Id.* at 36.

[49] *Id.* at 24.

[50] *Id.* at 29-30.

[51] State Court Record, Vol. 10, pp. 2266, 2269, 2271,

[52] *Id.* at 2329-2335, 2337-38.

[53] *Id.* at 2326-27, 2365-67.

[54] *Id.* at 2335-37.

petitioner relied to overcome the expiration of the AEDPA statute of limitations consists of the Cosimini Affidavit executed on March 18, 2009, almost eight years after the petitioner's conviction.[55] Petitioner contended that the affidavit established that Cosimini testified falsely at trial about his understanding of a sentencing agreement with the State. Specifically, in his affidavit Cosimini stated the following:

> At the time of Lance's death, I was being dealt with in the courts, I was facing an armed robbery charge. During one of my trips to the courthouse I was approached by District Attorney, Tracey Barberra. She told me she was grateful for my cooperation with the murder case and I was doing the right thing. She said she wasn't prosecuting my case, but because I was a first time offender she could see that I got a lighter sentence.

Cosmimi Affidavit, p. 2.

In addition, in his affidavit Cosimini stated that "Douglas Barnes never touched Lance Aydell" and "Douglas Barnes didn't hit, or kick Lance." *Id*. at 1, 2. Petitioner contended that the Cosimini Affidavit established that Cosimini's "vague" testimony at trial regarding the petitioner's involvement in the fight was motivated by his agreement with the State. Petitioner argued that this "new" information established that Cosimini believed he would receive a lenient sentence on unrelated criminal charges for providing testimony to convict the petitioner at trial.

The Cosimini Affidavit does not go nearly that far. Even if

---

[55] Record document number 50-2, pp. 1-2.

it could be read so broadly, the assertion does not even come close to what is required to make a colorable showing of "actual innocence" under *Schlup*, 513 U.S. at 329.

Cosimini's statements in his affidavit, to the extent that they are materially different from his trial testimony, are neither reliable or sufficient. The Cosimini Affidavit was not executed until nearly eight years after Cosimini's sworn testimony at trial. *See McQuiggin*, 133 S.Ct. at 1935-36 (noting that the timing of newly discovered evidence of innocence is relevant to its reliability); *Freeman v. Trombley*, 483 Fed.Appx. 51, 61 (6th Cir. 2012)(rejecting recantation that occurred ten years after the witness first testified under oath as sufficient to show actual innocence to excuse the untimeliness of the petition). Furthermore, the Cosimini Affidavit at most provides some additional support for the petitioner's defense theory that was before the trial court, which defense theory was inconsistent with other eyewitness testimony.[56] As previously noted, a petitioner must show that, in light of the new evidence, *no juror*, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggin*, 133 S.Ct. at 1928 (emphasis added) (quoting *Schlup v. Delo*, 513 U.S. 298, 329)). Petitioner has clearly not made that showing here, where abundant evidence supporting the guilty verdict still exists. Therefore, the petitioner has not

---

[56] *See* State Court Record, Vol. 8 through Vol. 13.

27

overcome the expiration of the AEDPA statute of limitations by a
showing actual innocence.

### 5. Relation-back standard under *Mayle*

The State argued that none of the claims asserted in the
Supplemental Petition "relate back" to the filing date of the
Original Petition and are therefore time-barred.[57]

Rule 15(c)(1), Fed.R.Civ.P., provides that "[a]n amendment to
a pleading relates back to the date of the original pleading when
... (B) the amendment asserts a claim or defense that arose out of
the conduct, transaction, or occurrence set out—or attempted to be
set out—in the original pleading."[58]  The Fifth Circuit has held
that "it is well settled that Rule 15 applies to federal habeas
proceedings."  *U.S. v. Gonzalez*, 592 F.3d 675, 679 (5th Cir.
2009)(citing *United States v. Saenz*, 282 F.3d 354, 356 (5th Cir.
2002)).

When an amended habeas corpus application is filed outside the

---

[57] The State also argued that an untimely filed claim which
does not relate back to a timely filed claim would constitute a
second or subsequent habeas corpus application that would have to
be authorized by the Fifth Circuit Court of Appeals.  Record
document number 60, opposition memorandum, p. 15.  It is not
necessary to address that argument at this time.

[58] A petition for writ of habeas corpus "may be amended or
supplemented as provided in the rules of procedure applicable to
civil actions."  28 U.S.C. § 2242.  In addition, Rule 12 of the
Rules Governing Section 2254 Cases provides that "[t]he Federal
Rules of Civil Procedure, to the extent that they are not
inconsistent with any statutory provisions or these rules, may be
applied to a proceeding under these rules."

statute of limitations, new claims raised in the amended application are timely only if they relate back to the claims raised timely. *Mayle v. Felix*, 545 U.S. 644, 649-50, 125 S.Ct. 2562, 2566 (2005). The new claims asserted in the amended application relate back to the date of the original application if the new claims "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." *Id*. at 649, 125 S.Ct. at 2566; *see also* Rule 15(c)(1)(B), Fed.R.Civ.P. It is not enough that the proposed amendments merely relate to the same trial, conviction, or sentence. *Mayle*, 545 U.S. at 656-64, 125 S.Ct. at 2570-75.

An amended habeas corpus application "does not relate back (and thereby escape [the] one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id*. at 664. In order to relate back, the timely claims and the proposed amendments must be "tied to a common core of operative facts." *Id*. In other words, in order for the claims asserted in the Supplemental Petition to relate back to the claims asserted in the Original Petition, they must arise "from the same core facts as the timely filed claims." *Id*. at 657.

Petitioner asserted three grounds for relief in the Original Petition: the State withheld a synopsis of Alan Hill's recorded statement (Ground 1), he was denied the right to cross-examine Alan

Hill on his inconsistent statements (Ground 2), and there was insufficient evidence to support his second degree murder conviction (Ground 3).

Petitioner asserted four grounds for relief in the Supplemental Petition: the prosecution withheld favorable and impeachment evidence regarding the sentencing agreement with Cosimini and allowed Cosimini to testify falsely regarding the sentencing agreement (Ground I), he was denied his Sixth Amendment right to confront Cosimini regarding the sentence agreement (Ground II), there was insufficient evidence to support his second degree murder conviction (Ground III), and the petitioner is actually innocent (Ground IV).

Except for the insufficient evidence claim, the grounds for relief asserted in the Supplemental Petition do not relate back because each asserts "a new ground for relief supported by facts that differ in both time and type" from those set forth in the Original Petition. *Mayle*, 554 U.S. at 650, 125 S.Ct. at 2566. Only the petitioner's insufficient evidence claim asserted in the Supplemental Petition relates back to the Original Petition.

### B. Insufficient Evidence

Although the petitioner's insufficient evidence claim asserted in the Supplemental Petition relates back to the Original Petition, the petitioner specifically acknowledged that it was extensively addressed in the Original Petition and was being reasserted in the

30

Supplemental Petition.[59]

There is no need to repeat the analysis of this claim made in the original Magistrate Judge's Report and the Supplemental Magistrate Judge's Report.[60]  Both reports are still pending before the district judge. For the reasons set forth in the original Magistrate Judge's Report and the Supplemental Magistrate Judge's Report, the petitioner's reasserted insufficiency of the evidence claim, Ground III in the Supplemental Petition, should also be denied.

## RECOMMENDATION

For the reasons stated in the Magistrate Judge's Report, the Supplemental Magistrate Judge's Report, and the additional reasons stated in this Second Supplemental Magistrate Judge's Report, it is the recommendation of the magistrate judge that the original Petition For Writ of Habeas Corpus Under 28 U.S.C. § 2254 By a Person in State Custody, and the Supplemental Petition for Writ of Habeas Corpus Under 12 (sic) U.S.C. § 2254 By a Person in State Custody, filed by petitioner Douglas Barnes be denied.

It is further recommended that a certificate of appealability be denied for the reasons set forth in the original Magistrate Judge's Report, the Supplemental Magistrate Judge's Report and this

---

[59] Record document number 50, p. 10.

[60] Record document number 16, pp. 8-12; record document number 19, pp. 3-4.

31

Second Supplemental Magistrate Judge's Report.

Baton Rouge, Louisiana, November 21, 2014.

_Stephen C. Riedlinger_
STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE